PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRACEE D. HILTON-RORAR, *et al.*, | ) | CASE NO.   5:09-CV-01004 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE DOWD |
| v. | ) | |
| | ) | MAGISTRATE JUDGE PEARSON |
| STATE AND FEDERAL | ) | |
| COMMUNICATIONS, INC., *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |

Before the Court is a discovery dispute among the above captioned parties.[1]  ECF No. 18.

Plaintiffs Tracee D. Hilton-Rorar and Brian Cassidy ("Plaintiffs") and Defendants State and

Federal Communications, Inc. and Elizabeth Z. Bartz ("Defendants") dispute the appropriate

responses to Plaintiffs' First set of interrogatories and First and Second requests for production of

documents as well as the terms of a Protective Order.  *See* ECF Nos. 18, 26, & 30.

## I.  Procedural Background

State and Federal Communications "assists its clients in complying with political

contributions, lobbying and procurement laws."  ECF No. 26.  Plaintiffs are a former and current

---

[1]  The Honorable Judge David D. Dowd, Jr. referred this case to the undersigned
Magistrate Judge for general pretrial supervision pursuant to the Court's order dated September
24, 2009.  ECF No. 22.

(5:09-CV-01004)

employee of Defendant State and Federal Communications. ECF No. 26 at 2. Both Plaintiffs, at one time, "held the positions of research associate and compliance associate." ECF No. 26 at 3. Both plaintiffs are also licensed attorneys. ECF No.30 at 2. Plaintiff Hilton-Rorar is an attorney employed by the law firm prosecuting the instant matter.

On April 30, 2009, Plaintiffs filed a Complaint alleging violations of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act for Defendants failure to pay overtime wages and unjust enrichment, among other state law violations. *See* ECF No. 1. On September 22, 2009, Plaintiffs filed a letter to the Court requesting, pursuant to Local Rule 37.1, a telephonic conference to resolve the above mentioned discovery dispute. *See* ECF No. 18. On the same date, Plaintiffs filed a motion for leave to file an Amended Complaint *Instante*r, which the Court granted on October 8, 2009. ECF Nos. 19 & 27, respectively. The Amended Complaint added a claim of FLSA retaliation relative to Plaintiff Cassidy who remains employed by Defendants. ECF No. 28 at 12.

The Court conducted a telephonic conference on October 2, 2009, pursuant to Plaintiffs' request to discuss the pending discovery dispute. *See* ECF No. 23 & Docket entry on October 2, 2009 [non-document]. At the conclusion of the telephonic conference, the Court ordered Defendants to respond to Plaintiffs' September 22, 2009 letter and for Plaintiffs to reply. Both parties have complied and submitted to the Court their respective positions regarding discovery. Having had the benefit of both written and oral arguments illuminating each parties position, the discovery dispute is ripe for the Court's resolution.

(5:09-CV-01004)

## II.  **Analysis**[2]

### A.  **Law**

"The scope of discovery is, of course, within the broad discretion of the trial court.  An order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice."  *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 402 (6th Cir.1998) (internal quotation marks and citation omitted).  Therefore, the decision to issue a protective order is left to "the broad discretion of the district court in managing the case." *Lewelling v. Farmers Ins. of Columbus, Inc.,* 879 F.2d 212, 218 (6th Cir. 1989).  Nevertheless, although the district court has discretion in managing discovery, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad."  *Lewis,* 135 F.3d at 402.  As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issue," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978).  The operative test in determining whether discovery on a particular matter is permissible is "whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence."  *Mellon v. Cooper-Jarrett, Inc.,* 424 F.2d 499, 501 (6th Cir. 1970).

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

---

[2] Unfortunately, the parties did not consistently define the dispute by reference to specific requests for documents or information.  The Court, therefore, has relied upon the specifics provided and attempted to interpret on its own others.  If fine-tuning or additional clarity is needed, counsel should notify the undersigned immediately so that a telephonic conference can be arranged.

(5:09-CV-01004)

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"

Fed.R.Civ.P. 26(b)(1). "'The scope of examination permitted under Rule 26(b) is broader than

that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead

to the discovery of admissible evidence.'" *Lewis*, 135 F.3d at 402 (*quoting Mellon v.*

*Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970)). Rule 26 of the Federal Rules of

Civil Procedure permits courts to issue a protective order, if justice requires and to protect

individuals from "annoyance, embarrassment, oppression, or undue burden or expense."

Fed.R.Civ.P. 26(c). The burden of establishing good cause for a protective order rests with the

movant. *See General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir.1973).

"To show good cause, a movant for a protective order must articulate specific facts showing

'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere

conclusory statements." *Avirgan v. Hull,* 118 F.R.D. 252, 254 (D.D.C. 1987) (citations omitted).

**B. Protective Order and Access for Hilton-Rorar**

The crux of the discovery dispute appears to be Defendants' belief that Plaintiff "Hilton-

Rorar's current position places her in direct competition with [Defendants because she] provides

services related to 'government affairs' and 'campaign finance'." ECF No. 26 at 1. Based upon

this belief, Defendants seek to prevent Plaintiff Hilton-Rorar from using and having exposure to

what Defendants deem sensitive and proprietary, *i.e.*, "Restricted," information and documents

regarding their clients. In response, Plaintiffs provided the following:

> Furthermore, Plaintiff Hilton-Rorar is not a direct competitor of Defendants.
> Defendants' business consists of filing lobbying reports with various state and
> federal agencies on behalf of clients and issuing an online publication. Plaintiff
> Hilton-Rorar does neither of these things. She is an attorney, actively engaged in

-4-

(5:09-CV-01004)

the practice of law at a law firm.  Defendant State & Federal is not a law firm and Defendant Bartz is not an attorney.  Defendants cannot validly argue that Plaintiff Hilton-Rorar is a direct competitor because she practices in the areas of government affairs and campaign finance.  Plaintiff Hilton-Rorar issues legal advice to her clients, whereas Defendants are not legally permitted to give legal advice.

ECF No. 30 at 2.  Plaintiffs' explanation is well taken.  Defendants have not convinced the Court that Plaintiff Hilton-Rorar is a competitor or presents a threat to Defendants.  As Plaintiffs aptly described, "Plaintiff Hilton-Rorar issues legal advice to her clients . . . ."  ECF No. 30 at 2. Defendants do not.

It is entirely reasonable to expect an attorney and client to communicate about certain documents and information relevant to the case.  Because Hilton-Rorar serves the dual role of a plaintiff and an attorney prosecuting the case, Plaintiffs' litigative stance could be substantially weakened by needlessly withholding such information from her.  The Court's decision is also informed by Defendants' failure to seek to similarly restrict the access of Plaintiff Cassidy who is still employed by Defendant State and Federal and presumably would have access to an even greater amount of sensitive and proprietary information than a former employee such as Plaintiff Hilton-Rorar.  As importantly, the Court also finds that Defendants have failed to convincingly articulate that serious competitive or financial harm will result from disclosure of the information deemed "Restricted" under the terms of a Protective Order.

Nevertheless, both parties have suggested a Protective Order as a resolution to the above-described discovery dispute.  The Court agrees that a Protective Order is appropriate, in this case, to balance Defendants' concerns regarding confidentiality against Plaintiffs' right to discovery. And, as stated above, the issuance of a Protective Order is certainly within the Court's discretion.

(5:09-CV-01004)

Accordingly, attached as Appendix A is the Court's approved Protective Order which permits all "Receiving Parties," including Plaintiff Hilton-Rorar, access to Restricted Material under the terms of the Protective Order.  The Protective Order should be easily recognized as an edited version of that initiated by Plaintiffs' counsel, ECF No. 18-10, and red-lined by Defendants' counsel, ECF No. 18-12.  Appendix A reflects that the Court adopts the red-lined version with the following exceptions or modifications:

1.    Language in newly added paragraph 7(a) which states "but not to include any parties to the proceeding" has been stricken and the following language has been added: "Parties to the Proceedings under the direction of an attorney of record who deems such disclosure necessary for purposes of the Proceeding and after executing the Declaration attached as Exhibit A."[3]

2.    The entire original paragraph numbered 11 in ECF No. 18-10 has been reinstated and the term "Restricted Material" added in addition to "Confidential Material"; *See* ECF No. 18-10;[4]

3.    Newly added paragraph 19 has been deleted[5] and replaced with paragraph 20

_____

[3] These modifications remove Defendants' proposed limitations on the access to Restricted Material by Plaintiffs Hilton-Rorar and Cassidy and place both Plaintiffs (should they desire access to Restricted documents and information) under the obligations of confidentiality and restrained use as set forth in the Protective Order.

[4] This language restrains all parties from sharing Confidential or Restricted information with any new/additional party "until said new Party has executed the Stipulation and Order."

[5] The Court's not sure what purpose newly added paragraph 19 serves other than to justify delay, especially given that both parties have had ample notice of information requested and ample time to have sought and received any third party consent necessary. Moreover, this language seems to duplicated that added by Defendants to paragraph 2(b) which permits the Producing Person to designate as Confidential Material that belonging to a "third party to whom the Producing Person reasonably believes they have a duty of confidentiality."  *See* Appendix A at p. 2 ¶ 2(b); ECF 18-12 at p. 2 ¶ 2(b).  Therefore, Defendants' redlined paragraph 19 has been stricken.

-6-

(5:09-CV-01004)

which reflects language mandated by the Case Management Order, ECF No. 11 at 4.

In sum, the Court's Protective Order limits access to and use by all recipients, including Plaintiffs Hilton-Rorar and Cassidy, of any Confidential or Restricted information or documents produced by Defendants to the prosecution of the instant case and appeal only.  Moreover, the Protective Order will umbrella all documents and information exchanged that is designated either Confidential or Restricted.

**C.  Client Identification and Pricing Information**

Plaintiffs have made requests for information[6] that would require Defendants to identify clients and reveal pricing information.  Defendants have objected claiming lack of relevance and confidentiality.  Plaintiffs' responded that this information was publicly available online, therefore not confidential.[7]  The Court does not find client identification and pricing relevant to the claims in the amended Complaint.   Moreover, given that Plaintiffs have already obtained a list of clients and pricing information as of October 8, 2009, this dispute is moot.  Although Defendants offered to provide Plaintiffs with a "form agreement" as a compromise, the Court

———————————————

[6]  Plaintiffs' First Set of Interrogatories Nos. 21 & 22; Plaintiffs' First Request for Production of Documents Nos. 15, 27,29, & 31; Plaintiffs' Second Request for Production of Documents No. 9.

[7]  The Court has not been able to locate online the client list attached as Exhibit 1, ECF No. 30-1, which was apparently available on October 8, 2009 as shown by the date in the lower right hand corner of ECF No. 30-1.  It has however, located the pricing information identified as Exhibit 2, ECF No. 30-2, and dated October 8, 2009.

(5:09-CV-01004)

will not order the production of that information due to lack of relevance.[8]  Defendants'

objections to the production of a client list and pricing information is SUSTAINED.

**D.  Financial Information**

Another area of contention is the timing of Defendants' production of financial

information, including state and federal tax returns and documents described as those "sufficient

to show the net worth of Defendant State and Federal Communications, Inc." and "all financial

statements that relate to Defendant State and Federal Communications, Inc.'s assets, inventories,

liabilities, gross and net income, and the amount of any undistributed profits in Defendant's

business."  ECF No. 18-7 at 7-8 (Request Nos. 10 & 11).  Defendants claim the request for

financial information[9] is premature as it relates only to punitive damages.  Defendants "agree[] to

provide such information if the Court does not grant Defendants summary judgment as to the

claims alleging punitive damages."  ECF No. 26 at 3.  Plaintiffs respond that the request for

financial information is not solely in pursuit of punitive damages but also relates to "harassment,

retaliations, and unjust enrichment" and claim that the financial data is most specifically related

to its claims of unjust enrichment.  *See* ECF No. 30 at 3-4.

As an initial matter, because Plaintiffs seek to recover punitive damages, evidence of the

financial condition of the Defendants is relevant in this litigation.  *See e.g.*, *City of Newport v.*

---

[8]  Plaintiffs' note that Judge Dowd ordered the production of a number of emails.  *See* ECF No. 30 at 3.  After the execution of the Court's protective order, Defendants shall produce the aforementioned emails in response to Plaintiffs' First Request for Production of Documents Nos. 27 & 31.

[9]  ECF No. 18-7 (Request No. 10).

(5:09-CV-01004)

*Fact Concerts, Inc*., 453 U.S. 247, 270 (1981) (noting that, under federal law, evidence of a

defendant's financial worth is traditionally admissible for the purpose of evaluating the amount

of punitive damages that should be awarded); *United States v. Big D Enterprises, Inc.,* 184 F.3d

924, 932 (8th Cir.1999) (same).  Defendants have not directed the Court to any *persuasive* law

that restricts the timing of the production of financial information.[10]  Contrarily, the

overwhelming majority of federal courts to have considered the question have concluded that a

plaintiff seeking punitive damages is entitled to discover information relating to the defendant's

financial condition in advance of trial and without making a *prima facie* showing that he is

entitled to recover such damages.  *See e.g.*, *Christy v. Ashkin,* 972 F.Supp. 253 (D.Vt.1997);

*Caruso v. The Coleman Co.,* 157 F.R.D. 344 (E.D.Pa.1994); *CEH, Inc. v. FV "Seafarer",* 153

F.R.D. 491 (D.R.I. 1994), *affirmed,* 70 F.3d 694 (1st Cir.1995); *Wauchop v. Domino's Pizza,*

*Inc.,* 138 F.R.D. 539 (N.D.Ind. 1991); *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,*

130 F.R.D. 149 (D.Kan. 1990).  This Court finds those decisions to be persuasive and will follow

them.  Therefore, Plaintiffs are entitled to discover evidence concerning the financial condition of

Defendants, without making a *prima facie* showing that it is entitled to recover punitive damages

on behalf of the aggrieved persons.

  Plaintiffs' request for financial information at this stage of the proceedings may arguably

---

[10]  Defendants' rely on *Rupe v. Fourman*, 532 F.Supp. 344, 350-351 (S.D. Ohio 1981),
which is distinguishable because, in that case, the Court refused to compel discovery of the
defendant's personal financial status because the Court chose to bifurcate the issue of damages
and hold a separate hearing on the issue of punitive damages, if liability were established.  The
record in this case shows no such ruling on bifurcation nor any such request from a party.  More
on point, the *Rupe* Court did, at the threshold, acknowledge that discovery of personal financial
information was appropriate.

(5:09-CV-01004)

seem premature but given that (1) the financial information sought is discoverable under Rule

26(b); (2) Defendants only object to the timing of the production, not the production itself; (3)

the case has been pending nearly six months and Defendants have not produced any responsive

documents other than possibly initial disclosures; (4) Defendants discovery responses are nearly

two months past due and discovery cutoff is November 20, 2009; and (4) the Court is reluctant to

build additional delay into this  stagnant lawsuit by permitting Defendants to wait until after a

possible motion for summary judgment is filed and ruled upon before providing discoverable

information.

Defendants' objections to producing the financial information[11] sought is OVERRULED.

**E.   Employees not Involved in this Litigation**

Prior to the addition of the FLSA retaliation claim, it was nearly beyond dispute that the

determination of whether a FLSA violation had occurred turned on the circumstances unique to a

given individual because exemption determinations are fact intensive inquiries that frequently

turn on the particular duties of specific employees.  *Miklos v. Golman-Hayden Cos., Inc.*, 2000

WL 1617969 (S.D. Ohio 2000).  The addition of the retaliation claim has changed the landscape

of discoverable information.

To establish a *prima facie* case of retaliation under the FLSA, an employee must prove

that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this

right was known by the employer; (3) thereafter, the employer took an employment action

adverse to him; and (4) there was a causal connection between the protected activity and the

---

[11]  Plaintiffs' Second Request for Production of Documents Nos. 10 & 11.

(5:09-CV-01004)

adverse employment action.  *See e.g.*, *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir.1999).  Such a *prima facie* showing of retaliation "creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  Under the anti-retaliation provision of FLSA, an employer is prohibited from "discharg[ing] or in any other manner discriminat[ing] against [an] employee because such employee has filed [a] complaint or instituted . . . any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3).  Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation.  *See* *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000).  Rule 26 permits discovery of any nonprivileged matter relevant matter to any party's claim or defense, including the identity and location of persons who know of any discoverable matter.  This holds true for information that may not be admissible as long as the "discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Plaintiff Cassidy's allegation of retaliation has met the showing required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) and is more than sufficient to support the discovery requests relevant to "other similarly situated employees" of State and Federal.  Defendants' objections to producing information and documents regarding "other similarly situated employees" of State and Federal relative to the Plaintiff Cassidy's FLSA

-11-

(5:09-CV-01004)

retaliation claim[12] is OVERRULED.  Defendants must produce responsive documents and information, in a manner consistent with this Order and the Protective Order.  To the extent necessary, Defendants may redact personal identification information such as social security numbers and date of birth.

The objections to producing information and documents of all employees relative to the overtime claim[13] are SUSTAINED because allegations relative to the overtime claims turn on facts specific to the plaintiff allegedly underpaid.  Plaintiffs have not indicated an intention to sue on behalf of others similarly situated.

Accordingly, the Court limits the production of[14] employee records and other documents regarding other current and former employees to (1) discovery relevant to Plaintiff Cassidy's claim of retaliation, and (2) to those other employees who have held or currently hold the same position as Plaintiff Cassidy, *i.e.*, that of Compliance Associates.[15]  *See* ECF No. 19 at 5 (naming Myra Cottrill and Jim Warner as "the other two Compliance Associates" and citing ECF No. 19-4 (Exhibit 4).

---

[12]  Plaintiffs' First Request for Production of Documents No. 5; Plaintiffs' Second Request for Production of Documents Nos. 4, 5, 7, & 8.

[13]  Plaintiffs' First Set of Interrogatories Nos. 5, 18, & 28; Plaintiffs' First Request for Production of Documents No. 2; Plaintiffs' Second Request for Production of Documents No. 3.

[14]  Plaintiffs' First Request for Production of Documents No. 5; Plaintiffs' Second Request for Production of Documents Nos. 4, 5, 7, & 8.

[15]  The Motion to file Amended Complaint *Instanter* specified that the new claim of retaliation arose during Cassidy's current position as Compliance Associate.  ECF No. 19 at 5.

(5:09-CV-01004)

### III.  Conclusion

For the foregoing reasons,

**IT IS THEREFORE ORDERED**  that Plaintiffs and Defendants comply with the terms and limitations set forth in the Court's Protective Order, attached as Appendix A.  Defendants are hereby ordered to provide all responsive documents and information to Plaintiffs within five days of the date of this Order.  In anticipation of that production, Plaintiffs (both clients and attorneys of record) are hereby ordered to execute the appropriate Declaration acknowledging an understanding of and willingness to be bound by the Protective Order within three days of the date of this Order.

**IT IS FURTHER ORDERED** that Defendants' objections to the production of a client list and pricing information are **SUSTAINED**.

**IT IS FURTHER ORDERED** that Defendants' objections to producing the financial information sought in Plaintiffs' interrogatories and document requests are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendants' objections to revealing information and documents concerning Defendant State and Federal's current and former employees not involved in the litigation is **SUSTAINED** in part and **OVERRULED** in part, as set forth above.


**IT IS SO ORDERED**.


 October 27, 2009                                   __s/ *Benita Y. Pearson*_____
Date                                                        United States Magistrate Judge

-13-