PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TRACEE D. HILTON-RORAR, *et al.*, | ) | CASE NO.  5:09-CV-01004 |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | JUDGE DOWD |
| v. | ) |  |
|  | ) | MAGISTRATE JUDGE PEARSON |
| STATE AND FEDERAL | ) |  |
| COMMUNICATIONS INC., *et al.*, | ) |  |
|  | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |

This Memorandum and Order resolves the final discovery dispute docketed prior to the

expiration of a rather protracted and industrious period of discovery.  ECF No. 97 (Notice

Defendants' Rule 37(a)(1) Certification of Good Faith Efforts to Resolve Discovery Dispute

Without Court Intervention).

**Relevant Procedural Background**

On October 22, 2009, State and Federal Communications Inc., *et al.* ("Defendants"),

propounded their second set of interrogatories and document requests to Tracee D. Hilton-Rorar,

*et al.* ("Plaintiffs"), requesting, *inter alia*, communications between the plaintiffs and documents

related to Hilton-Rorar's income after resigning from Defendant State and Federal

Communications, Inc. ("State and Federal").  On November 24, 2009, Plaintiffs responded to

Defendants' discovery.  On December 7, 2009, Defendants wrote Plaintiffs "outlining the

(5:09-CV-01004)

[alleged] deficient responses and requesting that Plaintiffs supplement their responses by Friday,

December 11, 2009." ECF No. 97 at 2 *referring to* ECF No. 97-3.  Specifically, Defendants

alleged that (1) Plaintiffs had failed to provide documents regarding communications between

themselves and (2) Hilton-Rorar had not provided documents showing her income earned after

her employment with State and Federal.  ECF No. 97 at 1.  Defendants noted that, upon initially

refusing to produce the communications between the plaintiffs, that neither Plaintiff had asserted

that a privilege excused the production of otherwise responsive communications.  ECF No. 97 at

2.

On December 15, 2009, Plaintiffs served Defendants with supplemental responses.

Defendants allege that the supplemental responses were also deficient because Plaintiffs still did

not provide documents regarding communications between themselves and that Hilton-Rorar had

only agreed to provide her income tax returns for 2009.  ECF No. 97 at 2.  Defendants, again,

noted that neither Plaintiff had asserted a privilege excusing production of responsive

communications.  ECF No. 97 at 2.

On December 22, 2009, Defendants filed "Defendants' Motion to Compel Plaintiff's

Responses to Discovery."  ECF No. 52.  Plaintiffs filed their opposition on January 5, 2010.  *See*

ECF No. 53.  The Court denied Defendants' motion to compel and ordered Plaintiffs' to submit

an affidavit detailing any reasonable fees and expenses incurred in opposing the motion to

compel.  ECF No. 60.

Defendants report that, on January 8, 2010, the parties conferred to determine whether the

previously filed discovery dispute could be resolved.  ECF No. 97 at 2.  On January 13, 2010,

2

(5:09-CV-01004)

Plaintiffs submitted a second set of supplemental responses to Defendants.  In that second

supplemental production, Plaintiffs still did not provide documents revealing the

communications had between the plaintiffs and, Defendants allege that, for the first time,

Plaintiffs asserted privilege: that responsive documents not produced because they "were

prepared in anticipation of litigation."  ECF No. 97 at 2.

On January 18, 2010, Defendants filed "Defendants' Rule 37(a)(1) Certification of Good

Faith Efforts to resolve Discovery Dispute Without Court Intervention."  ECF No. 68.  On

January 26, 2010, Plaintiffs objected to Defendants Rule 37(a)(1) certification.  ECF No. 71.

Plaintiffs claimed that in March of 2009, and before Plaintiffs retained Attorney Edward L.

Gilbert ("Attorney Gilbert") as counsel, the would-be plaintiffs, who are both attorneys, were

considering having Plaintiff Hilton-Rorar act as legal counsel for them both in this matter.  ECF

No. 98 at 3-4.

Oral arguments were held on January 27, 2010, on a motion for reconsideration and other

outstanding discovery issues, including the instant discovery dispute.  ECF No. 73.  The Court

ordered Plaintiffs to provide a privilege log identifying any e-mail communications between

Plaintiffs that were responsive but not produced to Defendants due to an alleged privilege.  ECF

No. 73.

On February 1, 2010, Plaintiffs produced a privilege log to Defendants.  On February 11,

2010, Defendants sent Plaintiffs a letter questioning certain of the communications reflected on

the log.  ECF No. 97-6.  On February 17, 2010, Plaintiffs sent Defendants a letter attempting to

excuse production due to the attorney-client privilege and/or work-product doctrine's application

3

(5:09-CV-01004)

to the communications between Plaintiffs.  ECF No. 97-7.  On February 23, 2010, Defendants

sent Plaintiff another letter requesting a "time and date to confer regarding outstanding discovery

issues."  ECF No. 97-8 at 3.  Defendants report that, on February 24, 2010, the parties conferred

on the telephone and Plaintiffs requested time to respond in writing to Defendants' requests.

ECF No. 97.  On February 25, 2010, Plaintiffs faxed a letter to Defendants maintaining that the

communications were privileged.  ECF No. 97-9.  On February 26, 2010, Defendants responded

by indicating that deposition testimony demonstrated that no privilege applies to certain of the

communications and also noted that Hilton-Rorar still had not provided documentation regarding

her income after her resignation from State & Federal.  ECF No. 97-10.  Defendants requested

the documents by March 1, 2010.  Plaintiffs e-mailed Defendants on March 1, 2010, stating that

Defendants would receive a response shortly.  ECF No. 97-11.  On March 2, 2010, Plaintiffs

provided a response to Defendants February 26th correspondence and a copy of Hilton-Rorar's

IRS Form 1099.  ECF No. 98-3.

On March 1, 2010, pursuant to Local Rule 37.1(a)(1), Defendants filed their second Rule

37(a)(1) Certification of Good Faith Efforts to Resolve Discovery Dispute Without Court

Intervention.  ECF No. 97.  Defendants assert that, at the time of filing, no response from

Plaintiffs had been received and thus, because Rule 37(b) provides that no discovery dispute will

be brought to the attention of the Court more than 10 days after the discovery cut-off date,

Defendants had no recourse other than filing the Rule 37(a)(1) certification.  ECF No. 97 at 4.

In their certification, Defendants assert that Plaintiffs have refused to provide responsive

communications between Plaintiffs, and that Hilton-Rorar has refused to provide documents

4

(5:09-CV-01004)

revealing her income earned since resigning from Defendant State and Federal.  Plaintiffs claim

that the documents sought regarding communications between the plaintiffs are covered by

attorney-client privilege and the work product doctrine, and that Hilton-Rorar has already

produced her IRS Form 1099 reflecting post-State and Federal income to Defendants.  ECF Nos.

98 at 3 & 98-1.  The Court's order docketed at ECF No. 101 resolved the matter regarding the

production of documents relative to income earned by Hilton-Rorar since her resignation from

Defendant State and Federal.

### Factual Background

The remaining dispute relates to e-mail communications between Plaintiff Brian Cassidy

("Cassidy") and Plaintiff Hilton-Rorar.  The e-mail communications span a time-period from

March 12, 2009 and September 20, 2009.  The e-mail communications fall in two categories:

those sent before Attorney Gilbert assumed representation of the plaintiffs ("pre-Attorney

Gilbert" representation) and those sent after Attorney Gilbert assumed representation of the

plaintiffs ("post-Attorney Gilbert representation").

### A.  Pre-Attorney Gilbert Representation

Before April 30, 2009, Plaintiffs, who are both attorneys, were not yet represented by

Attorney Gilbert.  Defendants argue that because Plaintiffs were not yet represented by Attorney

Gilbert (or anyone else) before April of 2009, two e-mail communications dated March 12, 2009

are not protected by the attorney-client privilege or the work product doctrine and, therefore, are

discoverable.  Plaintiffs claim that before April 30, 2009, they were confidentially discussing

whether Hilton-Rorar would represent them both and, therefore, the attorney-client privilege and

5

(5:09-CV-01004)

work-product doctrine protect the e-mail communications dated March 12, 2009 because those communications should be treated as confidential *consultations* that occur when an attorney and client are considering forming an official attorney-client relationship.

### B.  Post-Attorney Gilbert's Representation

Plaintiffs claim that all e-mail communications after April 30, 2009 (by which time Attorney Gilbert had been retained and the complaint filed) are protected by the attorney-client privilege and work-product doctrine, because Hilton-Rorar was acting as an agent of Attorney Gilbert's law firm and "[t]he attorney client privilege includes communications through persons acting as the attorney's agent[]."  ECF No. 97-7 at 2 (*citing State v. Post*, 32 Ohio St.3d 380,385 (1987)).

### Law and Analysis

### A.  Law Immunizing Relevant Evidence from Production

Two doctrines shield otherwise responsive materials from discovery – the attorney-client privilege and the work-product doctrine.  Although these protective devices are different in policy and practice, both can be used to shield identical materials from disclosure.  FRE 501(g)(1) defines attorney-client privilege as "the protection that applicable law provides for confidential attorney-client communications."   The work-product doctrine "means the protection that applicable law provides for tangible material (or its intangible equivalent) prepared in anticipation of litigation or for trial."  FRE 501(g)(2).  These doctrines protect from disclosure certain communications between and materials generated by the client, attorney and their representatives or agents.

6

(5:09-CV-01004)

### B. **Hilton-Rorar as Attorney Gilbert's Representative or Agent**

Defendants do not appear to dispute whether communications made by Plaintiff Brian

Cassidy ("Cassidy") directly to Attorney Gilbert are protected by the attorney-client privilege or

work-product doctrine.  The dispute concerns whether that attorney-client privilege and work-

product doctrine extends to communications made by Cassidy to Attorney Gilbert using Hilton-

Rorar as Attorney Gilbert's representative or agent.  And, for the two e-mails sent to Cassidy by

Hilton-Rorar before Attorney Gilbert's retention, whether those "Plaintiff-to-Plaintiff" e-mail

communications are protected by either immunity.

Although the assistance of others is often indispensable to the attorney's work, the

attorney-client privilege only exists and extends to communications to an attorney's

representative if the communication was made (1) in confidence and (2) for the purpose of

obtaining legal advice.  *See United States v. Kovel*, 296 F.2d 918, 921-22 (2d Cir. 1961) (finding

that attorney-client privilege extends to communications made to an attorney's agent for the

purpose of ultimately receiving legal advice); *cf. Antoine v. Atlas Turner, Inc.,* 66 F.3d 105,

109-10 (6th Cir. 1995) (finding that merely forwarding a default judgment to a client is not

privileged).

Hilton-Rorar is one of two Plaintiffs in the instant matter.  She also works as an

independent contractor in the law offices of her legal counsel in this matter, Attorney Gilbert.  In

his opposition to Defendants' certification and in several letters to Defendants, Attorney Gilbert

describes Hilton-Rorar as an independent contractor and an agent of his firm.  She is not,

however, actively involved as legal counsel in the instant action.  ECF No. 98 at 4; *see also* ECF

7

(5:09-CV-01004)

Nos. 97-9 at 3 & 98-3 at 2.

To explain how Hilton-Rorar served as his agent, Attorney Gilbert explained that (1) Cassidy submitted information and/or documents to Attorney Gilbert's office relating to the instant lawsuit, through Hilton-Rorar and (2) Cassidy "sent most of these emails to keep [Attorney Gilbert] up-to-date on the retaliation that [Cassidy] was experiencing" at State & Federal. ECF No. 97-9 at 3. To further illustrate his point, Attorney Gilbert compared Hilton-Rorar to other members of his office staff, including law clerks, and averred that "attorney-client privilege runs to everyone in my office." ECF No. 98-3 at 1.

The attorney-client privilege protects communications between or among a lawyer and client and their representatives or agents. 8 Wigmore, Evidence (McNaughton Rev. 1961), § 2317, at 618 (explaining that "[a] communication ... by *any form of agency* employed or set in motion by the client is within the privilege") (emphasis in original). Law clerks, secretaries, paralegals, file clerks, telephone operators, messengers, clerks not yet admitted to the bar, among other aides, including consulting experts may qualify as an attorney's representative. *See Von Bulow v. Von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) (recognizing that an attorney's effectiveness depends upon his ability to rely upon the assistance of various aides); *see also United States v. Kovel*, 296 F.2d 918, 921-22 (2d Cir.1961) (finding attorney-client privilege extends to communications made to an attorney's agent for the purpose of ultimately receiving legal advice).

The facts establish that Hilton-Rorar acted as a representative or agent for Attorney Gilbert by receiving confidential information sent *via* e-mail communications from Cassidy

(5:09-CV-01004)

(intended for Attorney Gilbert)  regarding the ongoing litigation and passing that information on to Attorney Gilbert.  ECF No. 97-9 at 3.  In fact, certain of the e-mails explicitly indicate that Cassidy's intention was to inform Attorney Gilbert.

That Hilton-Rorar was acting as Attorney Gilbert's representative when she received Cassidy's e-mails, alone, does not dictate that the communications at issue are protected.  It does, however, eliminate the possibility of waiver of either the attorney-client or work-product privileges due to the intentional disclosure of otherwise protected material to a third-party.

### C. Attorney-Client Privilege

#### 1. Generally

"The attorney-client privilege bestows upon a client a [right or] privilege to refuse to disclose and to prevent others from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 929 (N.D. Cal.1979) (citations omitted). The attorney-client privilege belongs to the client, and protects those materials and communications which involve confidential communications with her attorney or the attorney's representative.

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves the public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States* 449 U.S. 383, 389 (1981).  The burden of demonstrating that an attorney-client privilege exists rests upon the party

9

(5:09-CV-01004)

asserting the privilege.  *See, e.g. Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir.
1995); United States v. Adlman, 68 F.3d 1495, 1500 (2d Cir. 1995)*.

As the holder of the privilege, only the client has the right to waive the privilege.  The
attorney may (and quite frequently does) assert or waive the privilege on behalf of the client.
*Fisher v. United States, 425 U.S. 391, 402 n.8 (1976)* (noting it is "universally accepted" that an
attorney may invoke attorney-client privilege).

The attorney-client privilege protects only *confidential* communications, *i.e.*, those
intended to remain secret, between or among the lawyer, client, and their representatives.  It does
not cover communications that either the lawyer or client has with a third party.[1]  *See Matter of
Fischel, 557 F.2d 209, 211 (9th Cir. 1977)*.  As importantly, the privilege does not protect
communications between clients of a single or common attorney.  *United States v. Gotti, 771
F.Supp. 535, 545 (E.D.N.Y. 1991)* (finding attorney-client privilege does not cover client-to-
client communications).  In other words, if persons other than the client, attorney and agents or
representatives of either are present, the communication is not made in confidence and is not
privileged.

### 2.  Applicable Law

Federal Rule of Evidence 501 provides the following "General Rule"regarding attorney-
client privilege:

Except as otherwise required by the Constitution of the United States or provided by

---

[1]  An exception may apply when the communication is had among members of a
"common interest", "pooled information", or "joint defense" agreement.  *See In Re Teleglobe
Commc'ns Corp., 493 F.3d 345, 363-66 (3rd Cir. 2007)*.

(5:09-CV-01004)

> Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

The complaint in the instant matter includes alleged violations of a federal statute and pendent state law causes of action.  Defendants have not specified (somewhat understandably) which causes of action the disputed discovery would implicate.  FRE 501 indicates a general disposition to employ the privilege law of the forum state in diversity cases and federal privilege law in federal question cases.  The Sixth Circuit has held that questions of privilege that arise in federal question cases in which pendent state law claims are also raised should be governed by the federal common law of privileges.  FRE 501; *Hancock v. Dodson*, 958 F.2d 1367, 1372 (6th Cir. 1992) (*quoting  Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 459 (N.D.Cal.1978)). "This approach appeared to be most consistent with the congressional policy that 'in nondiversity jurisdiction civil cases, federal privilege law will generally apply.'" *Id*. (*citing* H.R.REP. NO. 1597, 93d Cong., 2d Sess. 7 (1970), reprinted in 1974 U.S.C.C.A.N. 7051, 7101).

The Sixth Circuit has found that when (1)  legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) in a communication relating to that purpose and  (4) made in confidence (5) by the client, then the attorney-client privilege to exists, and those confidences (6) are permanently protected (7) from forced disclosure by the client or by the legal adviser, (8) unless the protection is waived.  *Reed v. Baxter*, 134 F.3d 351, 355-35 (6th Cir.

11

(5:09-CV-01004)

1998); *Fausek v. White,* 965 F.2d 126, 129 (6th Cir.1992); *United States v. Goldfarb,* 328 F.2d 280, 281 (6th Cir.1964).

### 3.  Attorney-Client Privilege As Applied to the E-mail Communications

E-mails add complexity to the already difficult analysis of the application of the attorney-client privilege.  *See Thompson v. Chertoff,* No. 3:06-CV-004 RLM, 2007 WL 4125770, at *2 (N.D.Ind. Nov. 15, 2007).  E-mail chains can span over several days and involve many different recipients and authors.  *Id.*  Moreover, some e-mails in which counsel are involved may contain factual information, which is not protected by the privilege, while others within the same strand may contain exclusively legal advice.  *Id.* (*citing Muro v. Target Corp.,* 243 F.R.D. 301, 305 n. 4 (N.D. Ill.2007)); *see generally Upjohn v. United States,* 449 U.S. 383, 395-96 (1981) ("The client cannot be compelled to answer the question 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.").

The attorney-client privilege does not protect against discovery of the underlying facts contained in an attorney-client communication.  *Upjohn,* 449 U.S. at 395-96 (noting that non-privileged documents do not become privileged solely by virtue of being transmitted to counsel).  "[I]t is clear that when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged."  *Antoine,* 66 F.3d at 110; *see also Minebea Co., Ltd v. Papst,* , 228 F.R.D. 13, 19 (D.D.C. 2005); *Kansas Wastewater, Inc. v. Alliant Techsystems,* 217 F.R.D. 525, 528 (D.C. Kan. 2003) (finding privilege does not apply to facts that an attorney communicates to her client); *United States v. Savage,* 819 F.2d 1139 (4th Cir.

12

(5:09-CV-01004)

1987) (finding the privilege does not protect an attorney's statements to his client when the attorney is only acting as a conduit).  Unless the document itself is protected under another privilege, transfer by a client to an attorney of an independent or pre-existing document (such as business records, letters, memos, e-mails, or other items from the client's business or business files) that was not created for or because of (or that do not arise out of) the attorney-client relationship or consultation, does not bring the document within the attorney-client privilege. Such a document is regarded as existing independently of the relationship and not as communications made pursuant to it.

Confidential e-mails from a client to his attorney attaching a pre-existing unprivileged e-mail may, nevertheless, be protected.  "[T]he very fact that non-privileged information was communicated to an attorney may itself be privileged, even if that underlying information remains unprotected . . . .  [E]ven though one e-mail is not privileged, a second e-mail forwarding [it] to counsel might be privileged in its entirety [including (apparently) the attachment as attachment]. [It] is similar to prior conversations or documents that are quoted verbatim in a letter to a party's attorney." *Barton v. Zimmer Inc.*, 2008 WL 80647 *5 (N.D. Ind. 2008)*.

Having already determined that Hilton-Rorar was acting as an agent or representative for Attorney Gilbert when she received Cassidy's e-mails, the Court must next decide whether those communications *via* e-mail were made in confidence for the purpose of obtaining legal advice

13

(5:09-CV-01004)

from Attorney Gilbert.[2]

Understanding that a claim of privilege cannot be a blanket claim and, instead, must be made and sustained on a question-by-question or document-by-document basis, the Court conducted an *in camera* review of the all of the e-mails listed on Plaintiffs' privilege log and bearing Bates Numbers 496 through and including 607. *See* ECF No. 98-1.

### 4. E-mails Exchanged Pre-Attorney Gilbert's Representation

The e-mails exchanged between Hilton-Rorar and Cassidy prior to their representation by Attorney Gilbert are protected by the attorney-client privilege. In support of its position that the attorney-client privilege does not attach, Defendants quote from Hilton-Rorar's deposition during which she answered "No" to the question: "Are you serving as [Cassidy's] lawyer ?" She also answered "No" to the question: "And you don't have any attorney-client relationship with him, correct?" Both questions inquired about the *current* state of Cassidy's legal representation not his past legal representation or considerations had thereof when the March 12, 2009 e-mails were sent. Because the e-mails transmit communications made in confidence by Hilton-Rorar to Cassidy during consultations regarding the possibility of Hilton-Rorar acting as legal counsel for Cassidy, the communications are protected. ECF No. 97-9 at 3; *see also Banner v. City of Flint and Carl Hamilton*, 2004 WL 771672 (6th Cir. 2004) ( "When a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client, and the elements of the attorney-client privilege we set forth in *Reed v. Baxter*, 134 F.3d 351,

---

[2] The e-mails preceding Attorney Gilbert's representation were sent by Hilton-Rorar to Cassidy and are addressed separately.

(5:09-CV-01004)

355-56 (6th Cir. 1998) are satisfied . . . .").

Accordingly, the e-mails bearing Bates Numbers 496-549 are immune from disclosure due to the attorney-client privilege.

### 5.  E-mails Exchanged Post-Attorney Gilbert's Representation

The remaining e-mail communications are also protected by the attorney-client privilege because they involve communications made in confidence for the purpose of seeking legal advice by Cassidy to Hilton-Rorar, as a representative of Attorney Gilbert:

> 550, 551, 552, 553-554, 555, 556-557, 558, 559-561, 562, 563, 564-565, 566-567, 568-569, 570, 571, 572-578, 579, 580-582, 583-585, 586, 587, 588, 590,591, 592, 593-595, 596-598, 599-601, 602-604, 605-607

To the extent these e-mails contain attachments or other e-mail communications that are not otherwise independently privileged, the attorney-client privilege nevertheless applies because to order the disclosure of those e-mails would necessarily reveal the substance of a confidential client communication made seeking legal advice.  Thus, compelling disclosure would undercut a bedrock principle underlying the attorney-client privilege that is the privilege encourages clients to make full disclosure to their lawyers.  *Reed*, 134 F.3d at 356 ("A fully informed lawyer can more effectively serve his client and promote the administration of justice.").[3]

Accordingly, the e-mails bearing Bates Numbers 550, 551, 552, 553-554, 555, 556-557, 558, 559-561, 562, 563, 564-565, 566-567, 568-569, 570, 571, 572-578, 579, 580-582, 583-585,

---

[3]  Presumably, any unprivileged e-mail attachment or content (in some independent form) would have been produced if responsive to an appropriately worded  request.  A party can both (1) legitimately withhold an entire e-mail that forwards prior e-mails to counsel and (2) separately disclose those prior e-mails.  To find otherwise, would essentially exempt from protection all business communications.

(5:09-CV-01004)

586, 587, 588, 589, 590, 591, 592, 593-595, 596-598, 599-601, 602-604, 605-607 are immune from disclosure due to the attorney-client privilege.

### D. **Work-Product Doctrine**

#### 1. **Generally**

The work-product doctrine "is distinct from and broader than the attorney-client privilege." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir.1989) (*quoting United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975)).  Unlike the attorney-client privilege, the work-product doctrine is a procedural rule of federal law governed by Rule of Civil Procedure 26(b)(3).  *In re Professionals Direct Insurance*, 578 F.3d 432, 438 (6th Cir. 2009).  The work-product doctrine generally protects a broader range of materials than does the attorney-client privilege as the work-product doctrine protects materials prepared in anticipation of litigation or trial, including the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative.  The work-product doctrine applies to that prepared by or for a party or by or for a party's representative.  8 Wright, Miller & Marcus, *Federal Practice And Procedure:* Civil 2D § 2024 (1994).  The doctrine is designed to allow an attorney to "assemble information, sift what [she] considers to be the relevant from the irrelevant facts, prepare [her] legal theories and plan [her] strategy without undue and needless interference . . . to promote justice and to protect [her] clients' interests." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

"Ordinarily, a party may not discover *documents* and *tangible things* that are prepared *in anticipation of litigation or for trial* by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed.R.Civ.P. 26(b)(3)

16

(5:09-CV-01004)

(emphasis added).  Documents and tangible things identified as work product may be discovered regardless of their preparation in anticipation of litigation or trial if: (1) they are otherwise discoverable under Rule 26(b)(1) or (2) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.  Fed.R.Civ.P. 26(b)(3)(A).[4]  "Mental impressions, conclusions, opinions, or legal theories" of counsel or counsel's representative are protected from disclosure even when related documents or tangible things are ordered disclosed.  Fed.R.Civ.P. 26(b)(3)(B).

The party asserting the work-product doctrine bears the burden of establishing that the documents were prepared in anticipation of litigation or trial.  *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006).  Courts have used various tests to determine whether an item was prepared in anticipation of litigation or trial.  The Sixth Circuit has found an appropriate test to be "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable."  *Id* at 594 (quoting *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir 2006)).  Based upon its *in camera* review, the Court conducts the following analysis and reaches the following conclusions.

---

[4]  "'[F]act' work product, the 'written or oral information transmitted to the attorney and recorded as conveyed by the client' may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship. However, absent waiver, a party may not obtain the 'opinion' work product of his adversary; *i.e.*, 'any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories.'" *Tenn. Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002) (internal citations omitted).

(5:09-CV-01004)

### 2.  E-mails Exchanged Pre-Attorney Gilbert's  Representation

The e-mails sent by Hilton-Rorar to Cassidy before the filing of the instant lawsuit contain mental impressions, conclusions, opinions or legal theories developed in anticipation of litigation or trial and are, therefore, protected by the work-product doctrine.  That the e-mails were generated in advance of the filing of the instant lawsuit does not detract from that classification.  "The concept of 'anticipation of litigation' embodies both a temporal and motivational aspect."  *Amway Corp. v. The Procter & Gamble Co.*, 2001 WL 1818698, *6 (W.D. Mich. 2001).  In *Upjohn*, the Supreme Court applied the work-product doctrine even though no proceedings against the company had been threatened at the time the documents were prepared.  *Upjohn,* 449 U.S. at 386-87,

Defendants have not overcome the immunity from disclosure by showing of a substantial need for the materials and an inability to obtain the substantial equivalent of the information without undue hardship.  Accordingly, the e-mails bearing Bates numbers 496-549 are protected from disclosure by the work-product doctrine.  *See Banner v. City of Flint and Carl Hamilton,* 2004 WL 771672 (6th Cir. 2004).

### 3.  E-mails Exchanged Post-Attorney Gilbert's Representation

As intimated above, a determination that material is immune from production by the work-product doctrine requires the Court to decide whether there was a possibility of litigation and that the material at issue was prepared in anticipation of litigation or trial.  The remaining e-mails at issue were generated after the lawsuit in this matter was filed so there is no doubt that

(5:09-CV-01004)

there was a real possibility of litigation.[5]  *See In re OM Group Securities Litigation*, 226 F.R.D. 579 (N.D. Ohio 2005).  The Sixth Circuit has immunized from disclosure documents prepared "because of" litigation or trial.  *In re Professionals Direct Insurance Co.*, 578 F.3d 432, 439 (6th Cir. 2009).

The crux of the issue presented is whether the e-mails would have been generated in the absence of pending or possible future litigation.  *See Maine v. United States DOI*, 298 F.3d 60, 70 (1st Cir. 2002).  Stated differently, the e-mails are not protected by the work-product doctrine if they would have been prepared independent of any anticipated use in litigation or trial.  *Amway Corp.*, 2001 WL 1818698, *6 (W.D. Mich. 2001); *see also* 8 CHARLES A. WRIGHT, ARTHUR R. MILLER, & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE ¶ 2024 at 346 (2d ed. 1994) ("[E]ven though litigation is already in prospect, there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of litigation.").

The Court's *in camera* review reveals that the e-mail were generated by Cassidy in anticipation of litigation or trial and would not have been prepared independent of any anticipated use in litigation or trial.  Therefore, the e-mail communications bearing Bates Numbers 550, 551, 552, 553-554, 555, 556-557, 558, 559-561, 562, 563, 564-565, 566-567, 568-569, 570, 571, 572, 579, 572-578, 580-582, 583-585, 586, 587, 588-590, 591, 592, 593-595,

---

[5]  Rule 26(b)(3) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  The parties nor the Court question whether the disputed e-mails are relevant, in fact, their presence on Plaintiffs' privilege log denotes "relevant but protected from disclosure."

(5:09-CV-01004)

596-598, 599-601, 602-604, 605-607 are  protected by the work-product doctrine and, thereby, immune from disclosure.

### E.  Waiver

Federal Rule of Evidence 502 addresses waiver of attorney-client privilege and work-product doctrine in a federal proceeding.  A mandatory antecedent to waiver is disclosure.  *Id.* ("when disclosure is made in a Federal proceeding . . .").  Waiver of either the attorney-client privilege or the work-product sources of immunity does not necessarily obviate the protection provided by the other.  *Handgards, Inc.,* 413 F.Supp. at 929; *Hickman*, 329 U.S. 495.  As discussed in greater detail above, disclosure to Hilton-Rorar does not amount to waiver of either privilege because the Court has found that she was, at all relevant times, either acting as an agent for Attorney Gilbert or in consultation with Cassidy about becoming his legal representative, therefore, communications with or through her were protected by either the attorney-client or work-product privilege..

Defendants have made no other colorful allegations of disclosure of the e-mails.  The balance of the Defendants' waiver argument hinges on Plaintiffs' alleged untimely assertion of privilege.  Rule 26(b)(5) instructs that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection . . . the party must []expressly make the claim."  The Rule, however, does not affix a firm time frame for doing so.  Thus, the alleged tardy assertion of a privilege not waived does not create a waiver of that privilege.

20

(5:09-CV-01004)

### **Conclusion**

Based on the foregoing, the Court finds that the e-mail communications listed on Plaintiffs' privilege log and identified by Bates numbers 496-607[6] are protected by both the attorney-client privilege and the work product doctrine.  Accordingly, Plaintiffs are not required to produce the e-mail communications listed on the privilege log.  Plaintiffs' counsel should contact the Chambers of the undersigned to make arrangements to retrieve the documents reviewed *in camera*.


IT IS SO ORDERED.


  April 13, 2010                                            s/ *Benita Y. Pearson*
Date                                                         United States Magistrate Judge

---

[6]  It is the intention of the Court that all e-mails reflected on Plaintiffs' privilege log are protected by either the attorney-client or work-product privilege.  No importance should be attached to the variations of the display of Bates Numbers assigned to those e-mails in this order.