DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Tracee D. Hilton-Rorar, et al., | ) | |
| | ) | CASE NO. 5:09 CV 1004 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| State and Federal Communications, Inc., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs Tracee Hilton-Rorar (Hilton-Rorar) and Brian Cassidy (Cassidy) are former

employees of State and Federal Communications, Inc.[1]  In their six count first amended

complaint, plaintiffs allege that: 1) defendants violated the Fair Labor Standards Act (29 U.S.C.

§ 201 et. seq.) (FLSA) (Count 1) and the Ohio Minimum Fair Wage Standards Act (Ohio

Revised Code § 4111 et seq.) (OMFWSA) (Count 2) by failing to pay plaintiffs overtime for

hours worked in excess of 40 hours per week; 2) defendants were unjustly enriched by failing to

pay such overtime (Count 3); 3) defendants wrongfully constructively discharged Hilton-Rorar

for not working more than 40 hours a week without overtime pay (Count 4); and 4) defendants

retaliated against Cassidy for filing the instant lawsuit in violation of the FLSA (Count 5) and the

OMFWSA (Count 6).

_____

[1] Plaintiff Cassidy was still employed by S & F when the lawsuit was filed, but his employment subsequently ended on March 26, 2010.

(5:09 CV 1004)

The parties have filed cross-motions for summary judgment.  Plaintiffs have moved for summary judgment on Counts 1, 2, 5 and 6 of their first amended complaint.  ECF 108.[2] Defendants have moved for summary judgment on all counts of plaintiffs' first amended complaint.  ECF 106.[3]  For the reasons contained herein, the parties' cross-motions for summary judgment are DENIED.

## I.  BACKGROUND

A.      State and Federal Communications

Defendant State and Federal Communications (S & F) is owned by its chief executive officer, defendant Elizabeth Bartz (Bartz).  S & F provides publications and other services to corporate clients regarding federal and state laws pertaining to lobbying, political contributions, and procurement in all 50 states.

S & F's staff includes Research Associates and Compliance Associates.  Hilton-Rorar and Cassidy each held both positions while employed at S & F.  The parties do not dispute that each plaintiff worked more than 40 hours per week and was not paid overtime for hours for worked in excess of 40 hours.  Also not in dispute is that the pay for each plaintiff while they were employed at S & F exceeded $455 per week, the statutory threshold for exempt status.

---

[2] Defendants have opposed the motion (ECF 164) and plaintiffs have replied (ECF 168).

[3] Plaintiffs have opposed the motion (ECF 162) and defendants have replied (ECF 165). In addition, defendants have filed the deposition of John Dudash as supplemental support for their motion for summary judgment (ECF 173).  Plaintiffs responded to defendants supplemental support (ECF 175), to which defendants replied (ECF 177).

(5:09 CV 1004)

Research Associates at S & F are supervised by John Cozine.  A law degree is not a requirement to be a Research Associate, but S & F prefers individuals with law degrees for this position.

Research Associates monitor the laws in their assigned jurisdictions for changes related to lobbying, political contributions, and procurement in connection with an S & F publication. However, the parties disagree as to how the Research Associates go about that work.

Cozine states in his affidavit that S & F provides Research Associates with extensive materials which govern their work, but asserts that these materials are simply "guidelines" and that Research Associates are required to review, analyze and interpret state laws as part of their duties, all of which requires the exercise of discretion and independent judgment.  To illustrate this assertion, defendants offer e-mail communications involving plaintiff Cassidy regarding a Virginia law issue and time sheets for Hilton-Rorar, which document her work as a Research Associate.

However, plaintiffs argue that the materials provided by S & F to Research Associates are more than guidelines and that they were expected to follow those materials and exercised no discretion or judgment in performing their work.  As an example of the manner in which plaintiffs were expected to carry out their Research Associate duties, plaintiffs point to the deposition testimony of defendant Bartz.  Defendant Bartz describes standardized, specific search terms to be used when performing legislative research, and specific legislative search procedures.  According to defendant Bartz, both Research and Compliance Associates are

(5:09 CV 1004)

expected, "for the most part," to follow the training and layouts contained in the manuals that S & F provides to its associates.

Compliance Associates are supervised by Amber Fish Linke, who is a licensed attorney. A law degree is not a requirement to be a Compliance Associate.  However, except for Rebecca South, all Compliance Associates are licensed attorneys.[4]  According to defendants, Compliance Associates work with clients daily to prepare client reports and registrations and respond to client inquiries regarding lobbying, campaign finance, procurement and ethics laws.  Defendants contend that Compliance Associates exercise discretion and independent judgment in order to review, analyze and interpret the aforementioned laws and to advise clients.  However, plaintiffs point out that defendants emphasized the need for uniformity among associates in order to provide consistency in client services, that communications with clients were controlled, and that associates were expected to follow the materials provided by S & F regarding the conduct of their work.

B.    Brian Cassidy

Plaintiff Cassidy began working for S & F on May 1, 2007.  Cassidy is a licensed attorney.  He worked first as a Research Associate and then, beginning in January 2008, worked as a Compliance Associate.  Prior to the institution of this lawsuit on April 30, 2009, Cassidy received both merit salary increases and bonuses.

---

[4] Notwithstanding S & F's preference for attorneys as Research and Compliance Associates, defendants deny that the Research and Compliance Associates are practicing law, or that S & F provides legal advice.

4

(5:09 CV 1004)

The parties do not dispute that after the instant lawsuit was filed, Cassidy was assigned to a 10:00 a.m. to 7:00 p.m. work shift, was reprimanded, and received a lower bonus than other Compliance Associates.  While the parties do not dispute these events, the parties do dispute the factual bases and reasons that these events took place.

Cassidy points to prior performance accolades during his employment with S & F and alleges that his poor performance reviews, lower bonus compared to other employees with performance problems, and harsh treatment after April 30, 2009, is a consequence of his filing the instant litigation.  Defendants deny that any of these events are attributable to the instant litigation, and contend that other employees received higher bonuses and more favorable working hours because their performance was better than Cassidy's.  According to the affidavit of Cassidy's supervisor, Amber Fish Linke, "[s]ince the lawsuit was filed on April 30, 2009, Cassidy's work performance and attitude have been less than exemplary."  In her deposition, defendant Bartz testified that she considered Cassidy to be doing a "fair" job for a number of reasons.  Among these reasons, Bartz does not consider Cassidy to be a team player because, in her view, he does not take personal responsibility for inaccuracies in his work, and because he filed a lawsuit against S & F.

Cassidy provided two weeks notice to S & F and resigned on March 26, 2010, allegedly due "to the retaliation and harassment" he experienced at S & F.

C.      Tracee Hilton-Rorar

Plaintiff Hilton-Rorar began working for S & F on January 2, 2008 as a Research Associate.  In September 1, 2008, she became a Compliance Associate with S & F.  Like

5

(5:09 CV 1004)

Cassidy, Hilton-Rorar is a licensed attorney.  Hilton-Rorar's employment with S & F ended on

March 14, 2009.  The parties dispute the reason that Hilton-Rorar's employment ended with S &

F.  Defendants argue that she voluntarily resigned, and points to the timing of that resignation in

support of that conclusion.  Hilton-Rorar claims that her harsh treatment as an employee at S & F

resulted in her constructive discharge, and offers evidence of difficult working conditions at

S & F.

D.     Department of Labor Complaint

       The parties do not dispute that Hilton-Rorar and Cassidy worked more than 40 hours per

week as Research Associates and Compliance Associates and that they were not paid for time

worked in excess of 40 hours.  Around April 7, 2008, Hilton-Rorar filed a complaint with the

United States Department of Labor (DOL) regarding lack of overtime pay (the DOL Complaint).

       The lead investigator regarding the DOL Complaint was JoAnn Lach (Lach), who

conducted an investigation.  As described by John Dudash (Dudash)[5] in his deposition, Lach

prepared a "narrative report" that describes what transpired in the investigation and what actions

the DOL took to conclude the DOL Complaint filed by Hilton-Rorar.  As relayed by Dudash in

his deposition, Lach concluded that Hilton-Rorar and Cassidy were mis-classified as exempt

employees when they should have been non-exempt, along with a number of other S & F

employees.  However, the ultimate conclusion of the DOL as signed by Dudash was that, with

the exception of Mary Cassidy, all of the employees that Lach concluded were non-exempt were

actually exempt and therefore not entitled to overtime.

_____

       [5] Dudash was Lach's supervisor during the time the DOL Complaint was pending.

6

(5:09 CV 1004)

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 . When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." U.S. v. *Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"[T]he threshold inquiry [is] whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250. Therefore, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. *See also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

## III.  DISCUSSION

A.    <u>Genuine Issues of Material Fact Exist Regarding Plaintiffs' Exempt Status</u>

The central issue in this case is whether plaintiffs were exempt from overtime requirements when working as Research Associates and Compliance Associates at defendant

7

(5:09 CV 1004)

S & F under the professional or administrative exemption provided by the wage and hour laws.

The burden is on the employer to establish that the plaintiffs fall within an FLSA exemption.

However, the evidence before the Court demonstrates genuine issues of material fact in dispute

regarding how plaintiffs spent their time at work.  The question of how an employee spends

his/her time at work is a question of fact.[6]

B.    Genuine Issues of Material Fact Exist Regarding Constructive Discharge and Retaliation

Similarly, the parties have demonstrated material facts in dispute as to the reasons for and

circumstances surrounding Hilton-Rorar's departure from S & F, and regarding Cassidy's lower

bonus, reprimands in his personnel file, and other treatment experienced as an S & F Compliance

Associate following his institution of the instant action.  Because these disputed facts could be

reasonably resolved by a fact-finder in favor of either party, summary judgment is not

appropriate with respect to Hilton-Rorar's constructive discharge claim and Cassidy's retaliation

claims.

C.    Dismissal of Plaintiffs' Unjust Enrichment and Punitive Damages Claims is Premature

Defendants contend that plaintiffs' unjust enrichment claim should be dismissed as a

matter of law because plaintiffs have legal remedies that make them whole.  However, given that

the Court has concluded that there are genuine issues of material fact in dispute making summary

judgment inappropriate in this case, it remains to be determined whether the evidence and law

will support a claim for unjust enrichment.  Accordingly, defendants' motion as to unjust

---

[6] The DOL investigation and its conclusions are not binding on this Court or dispositive of this case.  Nevertheless, the Court notes the different views within the DOL regarding the exempt status of the plaintiffs is a reflection of need for a fact finder in this case.

8

(5:09 CV 1004)

enrichment is denied.  Similarly, the issue of the availability of punitive damages will also be decided by the Court at a later time after determining whether the evidence presented and the law support a punitive damages award.  Accordingly, defendants' motion as to punitive damages is denied.

IV.  CONCLUSION ON MOTIONS

A.      Parties' Cross Motions for Summary Judgment are Denied

When considering a motion for summary judgment, the Court must construe all reasonable inferences in favor of the non-moving party. The central question is whether the evidence is so one-sided that the moving party must prevail as a matter of law, or whether the evidence presents sufficient disagreement so as to require submission to a fact-finder.

For the reasons contained herein, the Court concludes that there are material facts in dispute regarding plaintiffs' employment with defendant S & F, and that the evidence before the Court presents sufficient disagreement so as to require submission to a fact finder.

Accordingly, plaintiffs' motion for partial summary judgment (ECF 108) is DENIED and defendants' motion for summary judgment (ECF 106) is DENIED.

B.      Remaining Motions

In addition to the parties' cross motions for summary judgment, numerous other motions are pending before the Court.  Both the number and nature of these motions reflects the intensity and adversarial nature of the battle being waged on both sides in the prosecution and defense of this case.

(5:09 CV 1004)

1.      Motion to Strike

The first such motion is defendants' motion to strike exhibits 1-44 filed in support of plaintiffs' motion for partial summary judgment on the grounds that the exhibits are not properly authenticated.  ECF 155.  The Court did not find it necessary to consider the contested exhibits in arriving at its determination that there are genuine issues of material facts in dispute and that summary judgment is not warranted in this case.

Accordingly, defendants' motion to strike (ECF 155) is DENIED as MOOT.

2.      Motion for Temporary Restraining Order and Preliminary Injunction

Plaintiff Cassidy's motion for injunctive relief filed on February 17, 2010 related to his concerns regarding harassment and retaliation as an employee at S & F.  ECF 83.  Subsequently, plaintiff Cassidy moved to stay his motion for injunctive relief, and such stay was granted.  ECF 94 and 95.  Further, Cassidy is no longer employed by S & F.

Accordingly, Cassidy's motion for injunctive relief (ECF 83) is MOOT, and the Clerk is directed to terminate the motion.

3.      Motion for Default Judgment

Plaintiffs' motion for default judgment is related to the DOL investigation and documents connected thereto.  ECF 157.  Plaintiffs claim in their motion that defendants intentionally withheld discoverable documents and that, pursuant to Fed. R. Civ. P. 37, the Court should enter default as a consequence.[7]

---

[7] Plaintiffs' motion for default also seeks sanctions against defendants in the form of attorneys' fees and costs, which is addressed in the following section.

10

(5:09 CV 1004)

Without commenting on the merits of plaintiffs' allegations made in support of their motion for default judgment, the Court declines to exercise its discretion to grant plaintiffs' motion for default judgment.

Accordingly, plaintiffs' motion for default judgment (ECF 157) is DENIED.

4.      Motions for Attorney Fees/Sanctions/Expenses

Presently before the Court are three outstanding motions for attorney fees, sanctions, and/or expenses: a) plaintiffs' Application for Attorney Fees related to Motion to Compel (ECF 69); b) plaintiffs' Motion for Sanctions related to Motion for Default Judgment (ECF 157); and c) plaintiffs' requests for costs related to Motion to Quash (ECF 50).[8]  Upon consideration of the present posture of this lawsuit, the Court considers it premature and counterproductive to rule on the pending motions regarding attorney fees, sanctions and expenses.

Accordingly, the motions for attorney fees, sanctions, and expenses (ECF 50, 69, and 157) are DENIED WITHOUT PREJUDICE.  Should plaintiffs prevail in this litigation and seek attorney fees, plaintiffs are granted leave to include these fees and costs in their fee application for consideration by the Court at that time.

## V.  TRIAL PREPARATION

In the Court's view, settlement of this case is unlikely.  Although the Court has not yet selected a date for trial in 2011, it is not too soon to begin preparing for the trial of this case. This case presents a number of complex issues.  For example, while the question of how

---

[8] Plaintiffs' request for expenses was made as part of the plaintiffs' Motion to Quash (ECF 50), and not as a separate motion.

11

(5:09 CV 1004)

plaintiffs spent their time at work is a question of fact, it is a question of law for the Court based

on the jury's fact finding whether plaintiffs are exempt employees under the applicable state and

federal laws.  The jury instructions, and accompanying interrogatories in this case, are critically

important.

      Accordingly, counsel are directed to separately prepare and file with the Court

comprehensive substantive jury instructions for each and every claim by plaintiffs, along with

accompanying interrogatories that are keyed to the instructions, by October 29, 2010.

The Court will conduct a status conference in this case on November 10, 2010 at 12:00 noon.


      IT IS SO ORDERED.


  August 18, 2010                             _s/ David D. Dowd, Jr._
Date                                   David D. Dowd, Jr.
                                       U.S. District Judge